## CHANDLER and others *vs.* NORTHROP.

Previous to the act of 1850, "for the protection of purchasers of real estate upon sales by order of surrogates," the *onus* of proving that the surrogate had jurisdiction of the subject matter, and of the persons interested in the property, was upon those claiming title through the proceedings before the surrogate and the sale. But since the act of 1850, the *onus probandi* is upon those whom claim in opposition to a sale had under an order of the surrogate, to show that no guardians were appointed, by the surrogate, for infant owners.

The legislature, by the act of 1850, intended to include all sales which had been previously made, by order of surrogates, pursuant to the provisions of the original act, and which provisions are contained in the revision of such act. Sales made prior to the enactment of the revised statutes, and under the revised laws of 1813, were therefore embraced.

The act of 1850 was not unconstitutional, as applied to sales of property made before the passage of the act; no vested right being thereby impaired or changed, but merely a rule of evidence.

MOTION for a new trial, upon exceptions taken at the trial, and ordered to be heard at the general term. The action was brought to recover the possession of real estate. The plaintiffs gave in evidence a conveyance including the premises, executed by Wilhem Willink and others to John Livingston, dated June 15, 1816; also a deed from Livingston and wife to Isaac Chandler, dated March 9, 1818; also a deed from Isaac Chandler and wife to Josiah V. Chandler, dated September 14, 1828. These deeds were duly recorded. The quantity of land conveyed was 175 acres. Josiah V. Chandler

entered under the conveyance from Isaac. He died in October, 1828, in possession, leaving Clinton V. and Adula his only children and heirs at law, the former less than one year old and the latter less than three. In June, 1844, Adula intermarried with the plaintiff Joseph W. Phillis. The land claimed in this action was about 20 acres of the 175 acres, and no portion of it was cleared or fenced. The defendant gave in evidence a warranty deed from Clark Dart and wife to Joseph Northrop, dated April 10, 1830, of the 20 acres. Also a deed from Thayer Northrop, Benjamin Northrop, George Northrop and John Northrop, dated April 19, 1851, of the 20 acres. Joseph Northrop entered into possession of the land more than 20 years prior to the trial, and continued in possession until his death, some six or seven years before the trial. The grantors in the deed to Stephen Northrop, the defendant, were the heirs at law of Joseph. The defendant Stephen entered under the deed to him, and was in possession at the time this action was commenced and at the time of the trial. The defendant rested, and the plaintiff then proved that the 175 acres deeded to Livingston had for thirty years past been known as the middle part of lot two. That Livingston was in possession of the house, and had improved a portion of the 175 acres at the time he conveyed to Chandler. The plaintiff rested, and the defendant asked the court to direct a verdict in his favor, on the ground that the plaintiff had not shown any title in Josiah V. Chandler. That the only title Chandler had was a naked possession of premises adjoining the lands in controversy; that the defendant and his grantors had been in the actual possession of the premises for more than twenty-five years, under a deed; that upon the whole case the defendant was entitled to a verdict. The defendant also asked that the plaintiff be nonsuited. The court refused to give such direction, and denied the motion for a nonsuit, and the defendant excepted. The defendant then gave in evidence a deed of the 175 acres, executed by William Northrop, as administrator, and Alina Chandler as administratrix, of the goods, &c. of Josiah W. Chandler, deceased, to Clark Dart, dated October 16, 1829.

This deed was given in pursuance of an order made by the surrogate of Erie county, directing the sale of the premises, and contained the usual recitals.  The bill of exceptions contained the proceedings before the surrogate, resulting in the appointment of Mrs. Chandler and William Northrop, administratrix and administrator; also the proceedings resulting in a sale of the real estate, and a confirmation of such sale, &c. The records of the proceedings in the surrogate's court did not show that any guardian was appointed for the infant heirs of Josiah V. Chandler.  The defendant proved by a witness who was a clerk in the surrogate's office in 1828, at the time the proceedings were had, that he remembered the proceedings had before the surrogate for the sale of the real estate; that at about the time the proceedings were commenced, Mrs. Chandler was at the surrogate's office and had her little children with her.  This witness stated that previous to 1840, the record books and papers in the surrogate's office were kept in a negligent and disorderly condition, without much system.  The defendant rested, and the plaintiff called Elvira Pierce, who was the widow of Josiah V. Chandler, and mother of the plaintiffs Adula and Clinton.  She stated that she had some recollection of the proceedings before the surrogate to sell her husband's land to pay debts; that she did not recollect of any guardian being appointed for the children, to protect their interest in the proceedings; that she was at the surrogate's office two or three times; thinks her children were not with her; that she told the surrogate about them and their ages; that she trusted the business to Northrop, now dead, and the surrogate, who is also dead.  The evidence being closed, the defendant's counsel insisted that the defendant had shown a good title; that enough had been shown to give the surrogate jurisdiction.  He asked the court to decide that if the plaintiffs claimed that no guardian had been appointed by the surrogate for the infant heirs, the burden of proof was upon them to show that fact; that the law would presume a guardian had been appointed; that at any rate the defendant had a right to have that question submitted to the jury, under the evidence.

The court decided that the plaintiffs were entitled to a verdict, and so directed; and the defendant excepted.

*J. L. Talcott,* for the plaintiffs.

*F. J. Fithian,* for the defendant.

*By the Court,* MARVIN J. It was conceded upon the argument that, by the law as settled in this state, the sale of the land, under the order of the surrogate, was void as to the plaintiffs unless a guardian was actually appointed for the infants Adula and Clinton. (*Bloom and others* v. *Burdick,* 1 *Hill,* 130. *Schneider* v. *McFarland,* 2 *Comst.* 459.) It was claimed, however, by the defendant's counsel, that the *onus,* as to the appointment of guardians, was upon the plaintiffs, and he relied upon the act of 1850 as producing this result. Prior to that act the *onus* would have been upon the defendant, who claimed a title through the proceedings before the surrogate, and the sale. The act referred to is entitled "An act for the protection of purchasers of real estate upon sales by order of surrogates." (*Sess. Laws of* 1850, *ch.* 82.) By the first section of this act it is declared, that "Every sale heretofore made, or hereafter to be made, under any of the provisions of the fourth title of chapter six, of the second part of the revised statutes, and of the acts amending the same, or in addition thereto, shall be deemed and held to be valid and effectual as if made by order of a court having original general jurisdiction, and the title of any purchaser at any such sale, made in good faith, shall not be impeached or invalidated by reason of any omission, error, default or irregularity in the proceedings before the surrogate, or by any allegation of want of jurisdiction on the part of such surrogate, except for the manner and for the causes that the same could be impeached or invalidated in case such sale had been made pursuant to the order of a court of original general jurisdiction."

If this act is applicable to the case, and is not unconstitutional, it is not denied that it embraces the present case. The

counsel for the plaintiffs insisted that the act is by its terms restricted to sales made under the provisions of the revised statutes; and that as the sale in this case was prior (in 1829) to the enactment of the revised statute, and under the revised laws of 1813, the statute does not apply. Secondly, that if it should be held that the statute applies, then it changes vested rights, and is unconstitutional; that it cannot have any retrospective operation.

. In my opinion, neither of these positions is sound. Although the case may not be within the letter of the act, I think it is within its spirit. By the revised laws the surrogate was directed "to appoint some discreet and substantial freeholder a guardian for such infant or infants, for the sole purpose of appearing for and taking care of the interest of such infant in the proceedings." (1 *R. Laws*, 454, § 31.) The provision in the revised statutes is substantially the same. (2 *R. S.* 100, § 3.) The revised laws were continued, substantially, in the revised statutes relating to the sale of the real estate of deceased persons for the payment of their debts. The proceedings under the revised laws were substantially the same as under the revised statutes; and in my opinion the legislature, by the act of 1850, intended to include all sales theretofore made. The act is remedial, and should be liberally construed. By the law, as settled in this state, it was incumbent upon the party claiming title, under a sale ordered by the surrogate, to show that the surrogate had jurisdiction of the subject matter and of the persons whose interests were to be affected. Thus it would be necessary for him to show, affirmatively, that a guardian was appointed for the infant heir. If the proceedings were "in a court having original general jurisdiction," it would be presumed that all the jurisdictional steps were taken, and that the proceedings were regular and proper, and the *onus* of showing the contrary was upon the party who sought to impeach the title acquired under the order for the sale. The act of 1850 is entitled "An act for the protection of purchasers of real estate upon sales by orders of surrogates;" "every sale heretofore made, or hereafter to be made, under any of the provisions of

the fourth title of chapter six of the second part of the revised
statutes," &c.   Now these provisions are the same, substan-
tially, as the provisions of the revised laws, under which the
sale in this case was actually made, and I think the statute of
1850 should be construed as including all previous sales made
pursuant to the provisions of the original act, and which pro-
visions are contained in the revision of such act.   The leading
rule in the construction of statutes is to ascertain the intention
of the legislature enacting the statute, and the intention being
ascertained, the law is known, and the will of the legislature
must be carried into effect.   Again, it is a rule of construction
that a thing within the intention of the statute is as much with-
in the statute as if it were within the *letter* of the statute.
(*The People* v. *The Utica Ins. Co.* 15 *John.* 358.   *Jackson* v.
*Collins,* 3 *Cowen,* 89.)   In *Schneider* v. *McFarland,* (2 *Comst.*
459,) the proceedings were in a surrogate's court, and it did
not appear that any guardian was appointed for the infants.
The proceedings were under the revised laws of 1813.   The
case was decided in October, 1849, and the legislature, at its
next session, passed the act of 1850.   I have no doubt the leg-
islature intended to include all sales theretofore made.   The
result is, that the *onus probandi* was upon the plaintiffs, to
show that no guardian was appointed.   It was claimed by the
defendant's counsel, that some evidence was given tending to
show that a guardian was appointed, which should have been
submitted to the jury.   It is not necessary to pass upon this
question now, as there must be a new trial.   The plaintiffs also
claimed that there were · other defects in the proceedings, or
rather that there was no evidence to prove certain facts which
were necessary to show the jurisdiction of the surrogate and
sustain the proceedings.   I think they are wrong in point of
fact as to some of the defects pointed out.   But if I am right in
the construction given to the statute of 1850, it will include all
the errors or defects referred to by the counsel, so far as to call
upon the plaintiff to show affirmatively that the acts alleged to
have been committed were in fact omitted.

In my opinion the act of 1850 is not unconstitutional as ap-

plied to cases of sale made before the passage of the act. It has not attempted to, and does not, impair or change any vested right. If in fact no guardian was appointed, the plaintiffs will recover the land. The statute has changed in certain cases and under certain circumstances, a rule of evidence which had been applied to surrogates' courts; and it has made the rule in this court the same as it has always existed in courts of original general jurisdiction. I think it was competent for the legislature to do this in reference to proceedings previously had in surrogates' courts. (*See* 7 *Barb.* 429.)

There must be a new trial; costs to abide the event.

[ERIE GENERAL TERM, January 12, 1857. *Mullett, Greene* and *Marvin,* Justices.]